# REPORTS

OF

## CASES ARGUED AND DETERMINED,

## JUNE TERM, 1845.

### WIER v. BUFORD.

1. When, by the terms of a written contract, money is to be paid to one, as the agent of a *feme covert*, the husband is not a competent witness to sustain the contract in a suit by the agent to enforce payment.

2. When a *feme covert* appoints one as her agent, to hire slaves, which, in point of fact, belong to her children, and a hiring is actually made, the person hiring is authorized to treat with the *feme covert* as the principal in the contract, until he has notice that the contract enures to the benefit of others; and her acts and declarations with reference to the slaves hired, will affect the contract in the same manner as if she had a separate estate in the slaves, or was acting in the premises by her husband's consent.

3. When a hired slave has left the service of the person to whom it is hired, and has gone to the house of the one hiring it, a second demand is unnecessary, when one is made, and the person hiring consents to take the slave if returned the next day.

Writ of Error to the Circuit Court of Marengo.

DEBT on a sealed note, by Buford against Weir and others. The declaration describes the note as payable to Buford generally, but when produced in evidence, it appeared to be payable

Wier v. Buford.

to him, as the agent of Eleanor Williams, and the sum promissd to be paid, was for the hire of two negroes, to wit: Fanny, Daley and child, from the date of the note to the 25th December, 1842.   It also provided that the slaves should be delivered to Thomas Buford, as agent, at Demopolis, at the end of the time.

At the trial, the defendant produced a witness, who testified that he was present the latter part of December, 1841, when Thos. Buford, as the agent of Eleanor Williams, hired out, at public auction, the two slaves named in the note, and that they were bid off by Wier; Fanny at $120 50.   Also, that in the month of April, or May, 1841, the woman, Fanny, ranaway from the house of Wier, and that, at the request of Wier, the witness accompanied him to the residence Mrs. Eleanor Williams ; that on their arrival there, Wier inquired of Mrs. Williams, if the woman, Fanny, was at her house; Mrs. Williams replied in the affirmative; then Wier inquired, if she intended to give her up.   Mrs. Williams replied, that according to the terms of the contract of hiring by Wier, he was bound to pay for the hire of the slaves, and that he had no right to retain them if he treated them cruelly ; or if they were dissatisfied.   Wier replied, that he did not wish to have any difficulty with Mrs. Williams, and informed her, that unless she returned the slave, Fanny, by the next day, he would consider his contract of hiring, as to her, at an end.   Also, that the slave did not afterwards to return to Wier.   It was further shown, by the evidence, that the slave was frequently seen at the house of Mrs. Williams, during the remainder of the year, and was not again in the possession of Wier.   The plaintiff thereupon introduced Samuel J. Williams, the husband of Eleanor Williams, who testified that the slaves mentioned in the note, did not belong to his wife, but belonged to the minor children of himself and her ; that the children have no legal guardian, but his wife had requested Buford to hire out the negroes.   The defendant objected to this evidence upon the grounds—1st. That Williams was not a competent witness.   2d. That it is incompetent for the plaintiff to show by parol evidence, that he acted in a different character from that disclosed by the note.   This objection was overruled.

The Court charged the jury, that if they should believe that Mrs. Williams had a husband, at the time of the demand of the slaves, by Wier, that Wier was bound to make the demand of the

husband, instead of the wife, so as to rescind the contract of hiring; and that if Mrs. Williams had no title to the slave in question, she could not consent to a rescission of the contract. Also, that if Wier gave her all the next day, after his application for the slave, to decide whether she would determine to return the slave, then he was bound again to apply for her.

A deed of gift was also in evidence, showing that Fanny belonged to the children of Mr. and Mrs. Williams. No proof of any demand, or effort to recover Fanny, by Wier, was offered, other than as before stated. The slave was also frequently seen going about the streets of Demopolis, apparently under the control of no one.

The defendant excepted to the several matters before stated, and are now assigned as error.

HOPKINS, for the plaintiff in error, made the following points;

1. The husband was not a competent witness. [4 Ala. Rep. 696; 4 Term. 671, 679.]

2. It was not competent for the plaintiff to contradict, by parol, the written admission on the note, that he was the agent of Mrs. Williams. [Mead v. Steger, 5 Porter, 498; 2 Ala. Rep. 571.]

3. As the contract was made with Mrs. Williams, through her agent, it was competent for her, by her acts or declarations, to rescind the contract. [5 Porter, 320, 325; Story on Bail, 255, 256, 262; 1 Salk. 65; 1 Ala. Rep. N. S. 423.]

PECK, contra, insisted that Williams was competent, because the money for the hiring was due, properly speaking, to the children, and not to Mrs. Williams. The recital in the note, that Buford was her agent, estopped no one, and the defendant, Wier, was not authorized to treat with her, as having a separate, or any other estate in the slaves.

GOLDTHWAITE, J.—1. We think there was error, both in the admission of the husband as a witness, and in the several charges given to the jury.

It may be, that the plaintiff was not estopped from showing that the slave in question did not belong to Mrs. Williams, but was the property of her children; but however that is, the evi-

dence, when this was made to appear, had no effect, whatever, on the rights of the parties. Concède that the slave did belong to the children, it then proves only, that the hiring by Buford, was an act authorized by the wife, the benefit of which would probably enure to her husband, if the hiring is to be considered a conversion of the hire. Even if there was evidence, from which his assent to the hiring could be inferred, it would amount to the same thing, whether the hiring was to be paid either to her use, or to his.

The test of the husband's interest, is the fact, that if Buford shall receive the money upon this contract, he cannot dispute, that Williams or his wife, is, one of them, entitled to receive it. He cannot dispute their claim to it, unless some other persons interpose and compel a payment. In this view, we think it clear, that Williams was an incompetent witness.

2. The more material inquiry, however, is, as to Wier's right to treat with Mrs. Williams as the principal in the contract, and to claim a discharge through her acts. And this seems to rest on grounds very similar to the other point. At the hiring, Buford announces that he acts as the agent of Mrs. Williams; the note expresses the same thing. Now, it is not very material, whether Wier knew that she had a husband, or whether he was ignorant of the fact. If he knew it, it was fair for him to presume, either that the wife had a sole and separate estate in the slave, as Buford acted as *her* agent, and not as her trustee; or that her husband permitted her to act for herself. Whatever was the fact, the contract was made substantially with her, and until Wier had notice, that in legal effect, it enured to the benefit of others, he was entitled to treat with her as a principal. So too, if in point of fact, as seems to have been shown, she, or her husband, had no title to the slave, this is a matter, that neither will be allowed to dispute, so as to cast a liability upon Wier, different from that assumed by him. By the hiring, she held herself out as entitled to act in the premises; her agent cannot refuse credit to her acts, and receive the benefit of the contract at the same time.

3. The remaining question, that it was necessary for Wier to make a demand of the slave, after the day during which he permitted her to be so returned, scarcely requires an examination. If his interview with Mrs. Williams, is to be considered as a de-

18

mand on his part, and a refusal on hers, there he might have rested the matter; but if, instead of doing so, he consented to receive the slave, if she would return the next day, this did not bind him to demand her again.

Judgment reversed and cause remanded.